CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA.
FILED

SEP 30 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **ROBERT EDWARD LEE SHELL** | ) | |
| **Plaintiff,** | ) | **CASE NO. 7:18CV00333** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HEATHER L. BOYD, ET AL.,** | ) | **By: Hon. Glen E. Conrad** |
| **Defendants.** | ) | **Senior United States District Judge** |

In this civil rights action under 42 U.S.C. § 1983, the plaintiff, Robert Edward Lee Shell, a Virginia Department of Corrections ("VDOC") inmate proceeding pro se, alleges that prison officials have violated his constitutional rights in various ways. After review of the record, the court will grant the defendants' motion for summary judgment as to the claims the motion addresses and grant them an opportunity to respond to the additional First Amendment claim that the court herein identifies in Shell's complaint.

### I. BACKGROUND

### A. Claims for Relief

In Shell's Complaint, ECF No. 1, which is not sworn or signed under penalty of perjury, he asserts that his rights under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated by defendants VDOC Director Harold Clarke and four officials at Pocahontas State Correctional Center ("Pocahontas"): Warden Young, Assistant Warden Walz, Qualified Mental Health Professional Heather L. Boyd, and Institutional Hearings Officer Bandy. The defendants have construed Shell's pro se pleading as attempting to state these claims: (1) violations of the Fourteenth Amendment Due Process Clause based on the imposition of disciplinary penalties and confiscations of his previously approved personal property items; (2) First Amendment challenges to a VDOC policy restricting the depiction of nudity in incoming inmate publications ("nudity policy"); (3) a First Amendment challenge to VDOC policies

prohibiting inmates from possessing original pieces of incoming mail ("correspondence policy");
and (4) a Fourteenth Amendment Due Process challenge to the VDOC policy prohibiting him from
ordering special food packages unless he has been free of disciplinary convictions for six months
("food packages policy").[1] Shell seeks declaratory and injunctive relief and return of monies taken
for his disciplinary fines.

## B. Confiscated Property

Shell was confined at Pocahontas when the events at issue occurred.[2] On November 30,
2015, Boyd told Shell that under his treatment plan, he was not allowed to have photographs of
Marion, his deceased girlfriend who is also considered the victim of his crime, or any woman who
resembled Marion. Boyd also gave Shell a copy of the treatment plan, which he signed. Compl.
Ex. F, ECF No. 1-1 at 118-19. This document states that Shell is "[p]rohibited from viewing or
possessing any publications, materials, or photos which may be detrimental to the treatment plan
or that may promote sexually deviant behaviors. This includes materials and photos of victim(s).
Until release." Id. at 119. Shell thereafter attempted to remove from his property items all pictures
of Marion (many of which he had been allowed to possess and display for years) and mailed them
to a friend outside the VDOC.

---

[1] The defendants have construed these claims from Shell's generally stated, overlapping "Causes of Action,"
titled "Constitutionality of Defendants' Actions," "Rule as Applied," and "Denial of Due Process." Compl. 28-33,
ECF No. 1. They request an opportunity to brief any additional claims that the court may recognize in Shell's
submission, and as stated, the court will grant that request.

    The court advises Shell that his gross misjoinder of unrelated claims in this case has greatly hampered the
efforts of the defendants and the court to winnow out his legal claims and adequately address them. Under Rules 18
and 20 of the Federal Rules of Civil Procedure, Shell should have filed a separate lawsuit for each of the four claims
the defendants have identified: the confiscated property claims, the nudity policy claims, the correspondence policy
claim, and the food packages claim. His pro se status does not excuse his blatant failure to comply with court rules
and orders.

[2] The parties' evidence of events, as summarized here, is largely undisputed, except where otherwise noted.
See Compl. Ex., ECF No. 1 & 1-1; Mem. Supp. Mot. Summ. J. Smalling Aff. and Bandy Aff, ECF Nos. 10-1 & 10-
2.

Shell's Claim (1) includes due process challenges to several disciplinary proceedings at Pocahontas. In response, the defendants offer an Affidavit from Hearings Officer Bandy with documentation of the challenged proceedings attached. Mem. Supp. Mot. Summ. J. Bandy Aff., ECF No. 20-1. A copy of VDOC OP 861.1, Offender Discipline, which sets out the guidelines for the inmate disciplinary proceedings, is attached to Bandy's Affidavit. Id. at 10-49. Bandy states that Shell was afforded all applicable due process rights under OP 861.1 with regard to the challenged disciplinary charges. Bandy Aff. ¶ 35.

On August 16, 2016, Boyd placed an institutional charge against Shell, PSCC-2016-1019, for possession of contraband—a newspaper article about Shell's crimes that included a picture of his victim. Compl. 7-8 and Ex. A, ECF No. 1-1 at 2-3, 7-16.; Bandy Aff. ¶¶ 10-13 and Ex. 57-73. The staff investigation of the charge concluded on August 16, 2016, the Disciplinary Offense Report ("DOR") was served on Shell that same day at 2:25 p.m.,[3] and he signed the report indicating that he had been informed of the charge against him and advised of his rights. Shell made a request for documentary evidence, which Bandy rejected as not being timely filed. Bandy conducted a disciplinary hearing on August 24, 2016, and found Shell guilty of the PSCC-2016-1019 contraband charge, based on the Reporting Officer's testimony that items prohibited under Shell's treatment plan had been found in his possession. Bandy imposed a $15 fine. Shell appealed his conviction and the $15 fine, and Warden Young upheld Bandy's rulings. Shell also had other confiscated items mailed to his friend for safekeeping.

Officers searched Shell's personal property twice on October 21, 2016, and confiscated 21 photographs and other materials for Boyd to inspect. Boyd later returned many materials, including four of the photographs, but she advised Shell that other materials violated his treatment

---

[3] Shell contends that "[n]one of the charges Boyd wrote were served within" the time limits outlined in VDOC OP 861.1RH, which requires that the "Disciplinary Offense Report should be served on the offender by midnight of the next working day following the discovery of the alleged offense." Compl. ¶ 31. The documentation attached to Bandy's Affidavit proves otherwise, and Shell has offered no evidence to refute it.

plan. Shell was permitted to authorize officials to mail the confiscated materials to a friend outside the VDOC for safekeeping until his release. The friend has advised Shell that the materials received did not include the 17 additional photographs that officers took from Shell.[4]

On November 22, 2016, Boyd wrote three additional, allegedly "false and illegal" charges against Shell, including PSCC-2016-1644 for unauthorized use of a law library typewriter. Compl. Ex. E, ECF No. 1-1; Bandy Aff. ¶¶ 14-17 and Ex. 74-88. The staff investigation leading to this charge was completed on November 22, 2016, the DOR was served on Shell at 5:13 p.m., and he signed the report indicating that he had been informed of the charge against him and advised of his rights. Shell requested documentary evidence, which Bandy approved and obtained. Bandy found Shell guilty of the offense, based on Boyd's testimony that Shell had used the typewriter in the law library to type a document that was not intended for an active legal case or action, and imposed a $15 fine. Assistant Warden R. Walz upheld the conviction on appeal. For the same conduct, Shell was also suspended from using the law library for six months for misuse of [its] resources. Compl. Ex. E, ECF No. 1-1 at 98.

In PSCC-2016-1645, Boyd charged Shell with possession of contraband for having the handwritten notes by his attorney, describing Shell's crime. Compl. Ex. F, ECF No. 1-1 at 108-122; Bandy Aff. ¶¶ 18-21 and Ex. 89-105. The staff investigation ended on November 22, 2016, the DOR was served on Shell at 4:57 p.m., and he signed the report indicating that he had been informed of the charge against him and advised of his rights. Shell requested documentary

---

[4] Shell, through his friend, has submitted to the court copies of the materials confiscated in August and October 2016 that the friend received from Shell; these materials are now on the court's docket as Exhibit C to his response in opposition. Pl. Resp. Ex. C, ECF No. 36.

Shell has also pursued grievances about the confiscation of these property items. He attaches to his complaint a copy of Regular Grievance PSCC-16-REG-00123, seeking the return of his property confiscated on October 21, 2016. Compl. Ex. B, ECF No. 1-1 at 18-27. Walz found Shell's Grievance unfounded, and Shell unsuccessfully appealed his decision. In another Regular Grievance, PSCC-17-REG-00015, Shell protested that 13 photographs were missing from his confiscated property. Compl. Ex. C, ECF No. 1-1 at 50-54. Walz found this Grievance unfounded, and that decision was upheld on appeal.

evidence, which Bandy obtained. Bandy found Shell guilty based on Boyd's testimony that Shell had in his possession two handwritten pages describing sexual acts—items prohibited by his treatment plan. On November 30, 2016, Bandy found him guilty of this charge and imposed a $15 fine. Shell's appeal was unsuccessful.

In PSCC-2016-1646, Boyd charged Shell with failure to follow posted rules and regulations for possessing the state inmate number of a former VDOC inmate. Compl. Ex. G, ECF No. 1-1 at 124-135; Bandy Aff. ¶¶ 22-25 and Ex. 106-121. The staff investigation ended November 22, 2016, the DOR was served on Shell at 5:07 p.m. that same day, and he signed the report indicating that he had been informed of the charge against him and advised of his rights. He requested documentary evidence, which Bandy obtained. On November 30, 2016, Bandy found Shell guilty based on Boyd's testimony that Shell had in his possession another offender's name and ID number and Shell's admission that the inmate had given it to him. Shell appealed his conviction and $15 fine, and Warden Young upheld the conviction.

On June 22, 2017, Boyd wrote a level 100 disciplinary charge against Shell—PSCC-2017-1031, for possession of Boyd's personal information. Compl. Ex. H, ECF 1-1 at 137-45; Bandy Aff. ¶¶ 26-30 and Ex. 122-27, ECF No. 20 & 20-1. This charge stated that Shell possessed a copy of Boyd's state license as a mental health worker. The staff investigation concluded on June 21, 2017, the DOR was served on Shell at 4:57 the following day, and he signed the report indicating that he had been informed of the charge against him and advised of his rights. Bandy found Shell guilty of this charge based on Boyd's testimony and, as a penalty, suspended Shell's telephone and kiosk (email) privileges for 45 days. On appeal, after Shell had served most of the suspension time, Warden Young dismissed the charge, based on information in Shell's appeal and on his conclusion that the document was a public document, not a copy of Boyd's license, that did not include personal information impermissible for Shell to possess. Shell contends that because this

level 100 charge was not immediately removed from his record after its dismissal, officials increased his security level and transferred him to River North Correctional Center ("River North"), a higher security and more restrictive facility than Pocahontas.

On June 22, 2017, Boyd also wrote PSCC-2017-1032, charging Shell with possession of contraband for having materials prohibited by his treatment plan because they related to his conviction and promoted sexually deviant behavior. Compl. Ex. I, ECF No. 1-1 at 147-59; Bandy Aff. ¶¶ 31-34 and Ex. 128-42. The staff investigation concluded on June 22, 2017, the DOR was served on Shell that same day, and he signed the report indicating that he had been informed of the charge against him and advised of his rights. The confiscated items were printed pages from Tony Ward's website that contained sexually-related material about Shell's victim and an advertisement from a <u>Vogue</u> magazine that depicted two women wrapping each other in stockings. Bandy found Shell guilty of this offense based on Boyd's testimony and imposed a loss of telephone and kiosk privileges for 45 days. Warden Young upheld his conviction on appeal.

### C. Administrative Remedies

In support of the defendants' motion for summary judgment, they submit an Affidavit from C. Smalling, the Human Rights Advocate at Pocahontas, as evidence of the available grievance procedures and Shell's use of them. Mem. Supp. Mot. Summ. J. Smalling Aff., ECF No. 10-1. A copy of OP 866.1, Offender Grievance Procedure, was attached to Smalling's Affidavit. <u>Id.</u> at 7-19. Smalling is responsible for maintaining grievance files on inmates at Pocahontas. The procedures in OP 866.1 provide a mechanism for inmates to resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The procedures also provide VDOC administrators with a means to evaluate potential problems, and, if necessary, correct those problems in a timely manner.

Under OP 866.1, all issues are grievable except those pertaining to policies, procedures and decisions of the Virginia Parole Board, disciplinary hearings, state and federal court decisions, laws and regulations, and other matters beyond the control of the VDOC. OP 866.1(IV)(M)(2). Among the issues the procedure lists as grievable by offenders are:

    a.      Procedures of the facility, region, division, and department <u>which affect the grievant personally</u>

    b.      Actions of individual employees and/or offenders <u>which affect the grievant personally</u>. . . .

OP 866.1(IV)(M)(1) (emphasis added). Regular Grievances must be submitted within 30 calendar days from the date of occurrence/incident or discovery of the occurrence/incident. Only one issue may be addressed per Grievance. The inmate must attach to the Regular Grievance all records necessary to investigate his complaint, including a copy of the Informal Complaint form, if required, and the staff response to it.

Regular Grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within two working days from the date of receipt, noting the reason for return on the intake section of the Grievance form. The inmate is instructed how to remedy any problems with the Regular Grievance when feasible, and he may then resubmit it. If an inmate wishes to obtain review of the intake decision on any Grievance, he must send it to the applicable Regional Ombudsman within five calendar days of receipt for a determination. There is no further review of the intake decision.

OP 866.1 states:

> An offender meets the exhaustion of remedies requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue.

. . . . If a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman [and] does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria for acceptance. The exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue.

OP 866.1(IV)(O)(2).

If a Regular Grievance is accepted at intake, the Warden or a designee reviews it and issues a Level I response. If the offender is dissatisfied with the Level I determination, he may appeal to Level II, triggering review of the Level I response by the Regional Administrator or another appropriate administrator. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Deputy Director or the Director of the VDOC conducts a review of the inmate's issue and the Level I and II determinations.

According to Smalling, VDOC records indicate that Shell was incarcerated at Pocahontas from April 29, 2009, until his transfer to River North on April 4, 2018. Smalling states that she has reviewed Shell's Grievance file at Pocahontas for any Grievances related to any issues he has raised in this case.

In Shell's Regular Grievance PSCC-17-REG-00020, stamped as received on March 15, 2017, Shell wrote:

> The PRC [Publications Review Committee] has disapproved my Dec. 2016 issue of Shutterbug magazine for containing nudity.
> The policy banning nudity is over-broad. Courts have consistently held that such over-broad policies are unconstitutional.
> Furthermore, the policy is simply silly. . . .

Compl. Ex. J, ECF No. 1-1 at 171. Smalling ruled this Grievance to be unfounded, and Shell appealed that finding through Level III of the grievance procedures, where Chief of Operations A. David Robinson upheld the disapproval decision of the PRC for this publication. Id. at 173.

Smalling states, "This grievance, however, only addressed the single issue of Shell's December 2016 'Shutterbug' magazine being disapproved." Smalling Aff. ¶ 11 and Encl. B. As

indicated above, this Grievance also challenges the nudity policy as overbroad and unconstitutional. According to Smalling, the publications policy was amended on April 1, 2015, to include the provision defining and prohibiting nudity. Id. at ¶ 12. Smalling states that Shell did not file a Regular Grievance challenging that policy within 30 days of the policy change as required under OP 866.1. Shell contends that he grieved the VDOC's nudity policy as soon as he was directly affected by the policy. Resp. Opp'n 15, ECF No. 33-1.

Shell filed a Regular Grievance complaining that his October 2016 issue of Vogue magazine was disapproved for containing nudity. Compl. Ex. J, ECF No. 1-1 at 188-89. On this Grievance, Shell also wrote: "Your policy banning all nude images is overbroad, making no distinction between sexual nudity and artistic nudity." Smalling rejected this Grievance on intake for an expired filing period and wrote, "Policy in effect since 4/1/15—cannot grieve content of policy, only disapprovals of specif[ic] items."

Shell filed a Regular Grievance complaining that his September 22, 2016, issue of Rolling Stone magazine was disapproved for containing nudity. Id. at 166-67. Smalling rejected it for an expired filing period and wrote, "Policy in effect since 4/1/15—cannot grieve content of policy, only disapprovals of specific items." Shell has not provided evidence that he appealed this intake decision.

Shell filed a Regular Grievance complaining that his July/August 2016 issue of Rangefinder magazine was disapproved for containing nudity. Id. at 200-01. On this Grievance, Shell also complained that the policy banning all publications containing nudity was overbroad and, therefore, unconstitutional. Smalling rejected the Grievance on intake for an expired filing period. Smalling wrote, "Policy in effect since 4/1/15—cannot grieve content of policy, only disapproval of specific items." Shell has not provided evidence that he appealed this intake decision.

In a Regular Grievance in August 2017, Shell complained that the disapproval of his June 2017 issue of Vogue magazine for nudity and the VDOC nudity policy were blatantly unconstitutional. Id. at 185-86. Smalling rejected this Grievance on intake for an expired filing period, and wrote, "Procedure took place 07/01/2015." Shell has provided no evidence that he appealed this intake decision.

Shell's Regular Grievance, stamped as received on August 31, 2017, complained that the disapproval of his June 15, 2017, issue of Rolling Stone magazine for nudity and OP 803.2 were blatantly unconstitutional. Id. at 169-70. Smalling rejected this Grievance on intake for an expired filing period, and wrote, "Procedure took place 07/01/2015." Shell has provided no evidence that he appealed this intake decision.

Shell's Regular Grievance, stamped as received on August 31, 2017, complained that the disapproval of his June 2017 Vogue magazine for nudity and OP 803.2 as written were blatantly unconstitutional. Id. at 192-93. Smalling rejected this Grievance on intake for an expired filing period, and wrote, "Procedure took place 07/01/2015." Shell has provided no evidence that he appealed this intake decision.

Shell submitted an Informal Complaint, PSCC-17-INF-00216, on March 20, 2017, regarding a new incoming correspondence policy. Smalling Aff. ¶ 13 and Encl. C. In the Informal Complaint, Shell stated that it was improper for the VDOC to make black and white copies of color documents and photos sent to him through the mail and then destroy the color originals, as the new policy would require. Smalling responded to Shell's Informal Complaint on March 22, 2017, and advised him that the new policy would take effect on April 17, 2017, and that inmates would have 30 days from that date to file a Regular Grievance about the change. Smalling states that Shell did not file a Regular Grievance regarding the new VDOC policy on offender correspondence.

Shell submitted an Informal Complaint, PSCC-17-INF-00346, dated May 3, 2017, stating that it was unacceptable to him to have color photos that had been sent to him photocopied in black and white with the originals destroyed. Smalling Aff. ¶ 14 and Encl. D. Smalling responded to him on May 4, 2017, and advised him that the update to the policy was made statewide, and staff at PSCC follow procedures when copying mail entering the facility. She also informed Shell that offenders could receive full color photographs through their JPay players. Smalling states that Shell did not file a Regular Grievance regarding the VDOC's amended correspondence policy's prohibition on original photographs.

Smalling also reports that her review of Shell's Pocahontas Grievance file does not show that he ever submitted any Informal Complaint or Regular Grievance regarding the VDOC food package policy. In his response in opposition, Shell concedes that he did not file any Regular Grievance about this policy. Resp. Opp'n 17, ECF No. 33-1.

## II. DISCUSSION

### A. The Summary Judgment Standard

The standard for review on a motion for summary judgment is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. See id., 477 U.S. at 255; Matsushita, 475 U.S. at 587.

To be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky., 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. See Oliver v. Va. Dep't of Corrs., No. 3:09CV000562010, WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing Fed. R. Civ. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. See Anderson, 477 U.S. at 256-57.

The defendants have filed a motion for summary judgment, supported with affidavits and documentation. They argue that Shell has presented no material dispute of fact on which he could persuade a factfinder to find in his favor. Shell's Complaint and his filings in response to the defendants' motion are not sworn or filed under penalty of perjury. Shell has also filed a pleading titled "Motion for Summary Judgment," ECF No. 12. It does not meet the definition of such a motion, however. Rather, the court construes it as a motion to strike the defendants' answer. Shell's motion complains that the defendants' asserted defenses rely, in part, on a number of documents initially attached to their summary judgment motion, many of which were redacted to disallow Shell from possessing items previously confiscated from him as violative of his treatment plan. Later, however, the court granted the defendants' motion to amend their pleading and evidence to exclude the documents at issue. See Mot. Amend. 2-3, ECF No. 20. Finding no legal ground justifying Shell's motion to strike the defendants' answer, the court must deny it.

## B. Failure to Exhaust Administrative Remedies

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory." Ross v. Blake, __U.S.__, 136 S. Ct. 1850, 1856 (2016). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)). The defendants bear the burden of proving the affirmative defense that Shell failed to exhaust available administrative remedies regarding his claims before filing suit. Jones v. Bock, 549 U.S. 199, 212 (2007).

The defendants argue that Shell failed to exhaust administrative remedies as to his claims challenging the VDOC nudity policy—Claim (2), the correspondence policy—Claim (3), and the food packages policy—Claim (4). Shell concedes that he did not exhaust his administrative remedies as to the food packages policy. He also has not submitted any sworn statement or other evidence to refute the defendants' evidence that he did not file a Regular Grievance complaining about the correspondence policy. Therefore, the court finds no genuine dispute of material fact and will grant summary judgment for the defendants as to Claims (3)[5] and (4) under 42 U.S.C. § 1997e(a).

---

[5] Moreover, even if Shell had exhausted Claim (3), it is without merit. This court and the United States District Court for the Eastern District of Virginia have both upheld as constitutional the portion of the VDOC correspondence policy prohibiting inmates from receiving original pieces of mail and photographs. See Strebe v. Kanode, No. 7:17cv321, 2018 WL 4473117 (W.D. Va. Sep. 18, 2018) (slip copy); Bratcher v. Clarke, No. 1:17cv474, 2018 WL 4658684 (E.D. Va. Sep. 26, 2018) (slip copy). In each case, the court ruled that this policy is rationally related to legitimate penological interests. See id. at *6-12; Strebe, 2018 WL 4473117, at *6-7 (both citing the four factors of Turner v. Safley, 482 U.S. 78, 89 (1987)). Shell's facial challenge to the policy is a substantively similar, but even narrower, claim than the one the courts considered in Bratcher and Strebe. Finding the rationale in the Strebe and Bratcher decisions to be applicable and persuasive here, the court will also grant the defendants' summary judgment motion as to Claim (3) as without merit.

The court cannot reach the same conclusion as to Claim (2), regarding the nudity policy. The evidence indicates that Shell fully exhausted his administrative appeals on Regular Grievance PSCC-17-REG-00020, which complained about both the disapproval of the December 2016 issue of <u>Shutterbug</u> magazine and the constitutionality of the nudity policy itself. On the face of this Regular Grievance, Shell wrote:

> The policy banning nudity is over-broad. Courts have consistently held that such over-broad policies are unconstitutional.
> Furthermore, the policy is simply silly. . . .

Smalling Aff. Encl. B, ECF No. 10-1 at 20-24. Smalling accepted this Grievance on intake, Walz issued a Level I response, and Shell then pursued the matter through Level III of the grievance procedures. The fact that prison officials now claim that they addressed only one portion of Shell's Grievance does not mean that Shell failed to fully exhaust both portions—his challenge to the policy itself and his complaint about disapproval of his magazine.

The defendants argue that, to be timely filed, any Grievance challenging this nudity policy should have been filed within 30 days of the policy's effective date. Yet, OP 866.1 states that to be grievable, a policy or procedure must affect the inmate personally. At the very least, this inconsistency in the defendants' exhaustion argument here creates a dispute of fact that precludes summary judgment as to the facial challenge to the policy in Claim (2). Furthermore, the defendants concede that Shell has exhausted his claim concerning the disapproval of the December 2016 issue of <u>Shutterbug</u>. Accordingly, the court will address these facets of Claim (2) on the merits.

The court finds no material dispute of fact on which Shell could demonstrate proper exhaustion of administrative remedies regarding the disapproval of several other magazine issues under the nudity policy, however. As to each of these other publications, Shell filed a Regular Grievance that Smalling rejected on intake. On each occasion, Shell took no further action. He failed to pursue additional, available remedies under the grievance procedures—to appeal the

intake decision and/or to file a revised Grievance challenging only the disapproval of the publication and pursuing that claim through the highest available level of appeal. Therefore, the court will grant the defendants' motion for summary judgment as to the portions of Claim (2) concerning the disapproval of certain issues of Vogue, Rolling Stone, and Rangefinder, based on Shell's failure to exhaust. Because the record reflects that Shell could not now complete the VDOC grievance procedures on these claims, the court will dismiss them with prejudice.

## C. The Nudity Policy

The defendants argue that summary judgment should be entered in their favor on Shell's First Amendment challenge to the nudity policy regarding incoming publications because this court has upheld the VDOC nudity policy against a similar First Amendment challenge. Fauconier v. Clarke, 257 F. Supp. 3d 746, 54 (W.D. Va. 2017), aff'd, 709 F. App'x 174 (4th Cir. 2018), cert. denied, No. 18-7762, 2019 WL 1231914 (Mar. 18, 2019) (citing Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006); Turner v. Safley, 482 U.S. 78 (1987)). The court in Fauconier determined that the policy was reasonably related to legitimate penological interests, other avenues remained available for inmates' exercise of the right to view non-obscene materials, alternative measures would adversely impact inmates and staff, the policy was not an exaggerated response to the problem it addressed, and the policy was not overly broad. Id. at 754-59. Shell complains that VDOC officials inconsistently apply the nudity policy. The court can find no respect in which these allegations give rise to a claim of constitutional proportions. In Fauconier, the court specifically held that occasional inconsistencies in the application of a policy, based on the discretion granted to the decisionmakers, do not render that policy unconstitutional. Id. at 762. For the stated reasons, the court will grant the defendants' motion for summary judgment as to Shell's Claim (2) regarding his facial challenge to the nudity policy.

The court also determines that the defendants are entitled to summary judgment as to Shell's challenge to the disallowance of the December 2016 issue of Shutterbug magazine under the nudity policy. The disapproval of the publication came from the PRC and was upheld by the chief of operations. See OP 803.2 at 5;[6] Compl. Ex. J, ECF No. 1-1 at 171-73. Thus, the defendants Shell has named had no personal responsibility for that decision and cannot be held liable for it under § 1983. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations").

In any event, Shell's claim is foreclosed by the decision in Fauconier. The PRC disapproved the December 2016 Shutterbug issue because it violated the nudity policy by depicting in some way, human or cartoon, male or female genitals, the pubic area, the female breast with less than a fully opaque covering of the areola, or the male or female anus with less than a fully opaque covering. Shell argues that if VDOC publications can contain the Great Seal of Virginia, which includes a bare female breast with the areola uncovered, then he should be allowed to possess his magazine. In Fauconier, the court recognized that "the fact that a statute is constitutional as written does not preclude a court from deciding whether the statute has been applied in a particular case in a way as to violate various constitutional provisions." 257 F. Supp. 3d at 761. The plaintiff in that case complained that an Esquire magazine containing a cartoon depiction of nudity was allowed under the nudity policy, but Playboy magazines were disapproved for nudity. Id. Considering the deference courts must grant to prison officials in prison management decisions, and "in light of the regulation's rehabilitative and security purposes," the court concluded that this seeming inconsistency in application, vested in the professional discretion of the PRC and the chief of operations, did not violate the plaintiff's constitutional right. Id.

---
[6] The court takes judicial notice of this VDOC policy regarding incoming publications, available online at https://vadoc.virginia.gov/general-public/operating-procedures.

Shell's claim falls squarely into the same category. Accordingly, the court will grant the defendants' motion for summary judgment as to Claim (2) in its entirety.

### D. Due Process Claims

The defendants argue for summary judgment in their favor on Claim (1) because Shell was either not deprived of a protected liberty or property interest or suffered no violation of his due process rights related to the challenged disciplinary proceedings and property confiscations. The court agrees that Shell has not established any due process violations.

Prisoners may not be deprived of life, liberty or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, the Due Process Clause applies only when government action deprives an individual of a legitimate liberty or property interest. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564 (1972). Penalties that do not impose an atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life are not constitutionally protected interests under the Due Process Clause. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). In particular, a penalty that imposes a suspension or loss of telephone privileges or electronic devices does not deprive a prisoner of an interest protected by the Due Process Clause. See Cooper v. Duncan, 2017 WL 2271501, at *3 (W.D. Va. May 23, 2017); Obataiye-Allah v. Clark, 2014 WL 7240509, at *6-7 (W.D. Va. Dec. 18, 2014). Furthermore, there is no constitutional or statutory right to use a law library, see Lewis v. Casey, 518 U.S. 343, 351 (1996), and a temporary inability to use a law library is not atypical in the prison setting.

For Shell's disciplinary convictions in PSCC-2017-1031 and PSCC-2017-1032, Bandy penalized him with a temporary loss of privileges—telephone and electronics usage or use of the law library. Because these penalties did not deprive Shell of a federally protected liberty interest,

17

he had no constitutional right to particular procedural protections before losing the privilege or during the disciplinary proceedings. Thus, the court will grant summary judgment for the defendants as to Shell's due process claims concerning these two disciplinary charges.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. If such a disciplinary proceeding subjects the inmate to loss of a constitutionally protected interest, such as earned good conduct time, or perhaps a portion of property,

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff, 418 U.S. at 563-67).

Wolff "did not require either judicial review or a specified quantum of evidence to support the factfinder's decision." Id. at 454. "The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action." Id. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact." Id. at 456. Determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." Id. at 455.

Shell complains that (a) none of the challenged disciplinary charges against him were served upon him by midnight of the next working day following discovery of the offense as required by VDOC OP 861.1(IX)(A)(2); (b) he was not allowed "to know the nature of the evidence against him . . . until just prior to the hearing," and he was precluded "from obtaining evidence from outside" the prison that could establish his innocence; and (c) Bandy, as a VDOC

employee, was not an unbiased or impartial hearings officer, such as a magistrate or other individual outside the VDOC would be. Compl. 32, ECF No. 1. Shell has offered no statement from himself or any other witness that is sworn or made under penalty of perjury as required to oppose a motion for summary judgment. See Oliver, 2010 WL 1417833, at *2.

Moreover, the defendants' evidence indicates that Shell received the procedural protections required under Wolff in each of the disciplinary cases where Shell received a monetary penalty. Their documentation shows that Shell received ample notice of each charge before the disciplinary hearing on that charge. Hill, 472 U.S. at 454. The defendants also assert that Shell received timely notice of the charges under VDOC policy as well. In any event, a violation of VDOC policy does not support a constitutional claim actionable under § 1983. See United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

For each disciplinary offense, the evidence shows that Shell received a copy of the charge, information about his due process rights, and forms to request witnesses and documentary evidence. The records indicate that Shell appeared, testified, and presented his defense. He also received written statements outlining the evidence Bandy relied upon and the reasons for the finding of guilt. The defendants' evidence is that Bandy had some factual basis for each of the conviction decisions on Shell's charges for violating his treatment plan, and Shell has presented no sworn statement or other sufficient evidence in opposition. Finally, the court concludes that the VDOC practice regarding documentary evidence and its practice of having a VDOC employee act as the disciplinary hearings officer are consistent with the constitutional due process requirements in Wolff. Hill, 472 U.S. at 454 (noting that Wolff does not require judicial review in prison disciplinary proceedings); Wolff, 418 U.S. at 566 ("Prison officials must have the

necessary discretion to keep the hearing within reasonable limits . . . as well as to limit access . . . to compile other documentary evidence."). Based on the unrefuted evidence regarding events during the disciplinary proceedings, the court finds no genuine dispute of material fact and concludes that the defendants are entitled to entry of summary judgment in their favor on Shell's Claim (1), alleging due process violations related to disciplinary proceedings.

The court also construes Shell's Claim (1) as contending that Boyd wrongfully confiscated personal property items from him without due process on October 21, 2016, based on her conclusion that they were inconsistent with his treatment plan.[7] Most of these items are now in the possession of Shell's friend outside the VDOC. Thus, Shell cannot claim that he has been deprived of them; he merely cannot possess them in his cell at Pocahontas.

Shell also complains that 17 photographs taken from his cell in October 2016 have allegedly disappeared and that others Boyd returned to him were damaged. It is well established that a negligent or "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Shell had available remedies under Virginia state law to seek reimbursement for the value of the property items that Boyd allegedly lost or damaged. Va. Code Ann. § 8.01-195.3 ("Virginia Tort Claims Act" or "VTCA"). The Fourth Circuit has held that the VTCA and Virginia tort law provide adequate post-deprivation remedies for torts committed by

---

[7] Some of these materials, as well as some items Boyd later confiscated and disciplined Shell for possessing, Shell characterizes as legal mail, confiscated in violation of his Sixth Amendment right to communicate with counsel and his First Amendment right to access the courts. He has proven no such claim, however. An inmate has no protected right under the Sixth Amendment in a civil case to communicate confidentially or otherwise with his attorney. See Wolff, 418 U.S. at 576 ("As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting. . . ."). Shell presents no evidence that the confiscated items have any relationship to an active criminal case. An access to courts claim requires a showing of particular harm to the inmate's litigation of a viable legal claim. Lewis v. Casey, 518 U.S. 343 (1996); Altizer v. Deeds, 191 F.3d 540, 548 (4th Cir. 1999) (finding practice of opening and reading all inmates' outgoing legal mail to search it and censor security threatening information did not violate inmates' constitutional rights). Shell offers no evidence that Boyd's confiscations have harmed his ability to litigate a viable legal claim.

state employees. <u>Wadhams v. Procunier</u>, 772 F.2d 75, 78 (4th Cir. 1985). The availability of a tort action in state court fully satisfies the requirement of meaningful post-deprivation process. <u>Hudson</u>, 468 U.S. at 536. Thus, the court concludes that the defendants are entitled to summary judgment as to Shell's due process claims regarding the disallowance of his property items in October 2016 and the alleged loss or damage of his photographs.

### E. First Amendment Free Speech Claim

Courts have held that in a variety of contexts, as part of its First Amendment protection of free speech, "the Constitution protects the right to receive information and ideas." <u>Stanley v. Georgia</u>, 394 U.S. 557, 564 (1969). "In the prison context, regulations which circumscribe constitutionally protected interests are permitted so long as they are reasonably related to legitimate penological interests." <u>Couch v. Jabe</u>, 737 F. Supp. 2d 561, 565 (W.D. Va. 2010) (internal quotation marks, alteration, and citations omitted).

In Shell's response to the defendants' motion, he states that "[a] major thrust of [his] complaint is that the materials confiscated by Defendant Boyd [in October 2016 and in the later disciplinary actions] did not, and do not violate any VDOC policy, nor do they violate his so-called 'treatment plan.'" Resp. Opp'n 1, ECF No. 33. He asserts that Boyd's actions deprived him of his First Amendment right "to read and view printed material, written material, and images." <u>Id.</u> at 29. While this First Amendment claim is not as clearly stated in the complaint as Shell believes, the court will construe his submissions liberally to include it in this action.

Shell has not stated facts, however, showing that defendant Clarke had any direct involvement in the allegedly wrongful confiscation of Shell's materials and photographs or that he received notice of the issue. Thus, Shell has not shown that Clarke committed or failed to correct the alleged violation of Shell's First Amendment right. <u>Trulock</u>, 275 F.3d at 402.

Liberally construed, Shell's submissions do indicate that Boyd, Bandy, Walz, and Young were personally involved in the confiscations or had notice of them and an opportunity to correct the alleged violation by ordering that he could possess the materials in prison after all. Accordingly, the court construes Shell's submissions as presenting claims against Boyd, Bandy, Walz, and Young for confiscating personal property items already in his possession, in violation of his First Amendment right to receive and possess in prison information and ideas. As relief on this claim, Shell has sought only declaratory and injunctive relief to regain access to the confiscated materials. The court will, therefore, direct these defendants to respond to Shell's First Amendment claim as construed.

## III. CONCLUSION

For the stated reasons, the court concludes that the defendants are entitled to summary judgment as to the claims addressed in their motion and herein resolved based on the claims' lack of merit or on Shell's failure to exhaust administrative remedies before filing this action. Because it is not clear that Shell is now unable to exhaust and refile his Claim (4) regarding the food package policy, the court will dismiss that claim without prejudice, but will dismiss Claims (1), (2), and (3) and all claims against Clarke with prejudice. This action will go forward, however, on Shell's claim alleging that the confiscations of his personal property items violated his First Amendment right to freely receive and possess information and ideas. An appropriate order will be entered herewith.

The court will mail a copy of this memorandum opinion and the accompanying order to plaintiff.

**ENTER:** This 30th day of September, 2019

_____

Senior United States District Judge

22